# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 10, 2011

## STATE OF TENNESSEE v. JEFFREY MARTIN

**Direct Appeal from the Circuit Court for Maury County**
**No. 16816      Jim T. Hamilton, Judge**

---

**No. M2009-01673-CCA-R3-CD - Filed April 30, 2012**

---

The defendant, Jeffrey Martin, was convicted by a Maury County jury of sale of cocaine in an amount of .5 grams or more, a Class B felony. Following a hearing, the trial court sentenced him, as a Range III offender, to twenty-five years in the Department of Correction. The court further ordered that the sentence be served consecutively to prior unserved sentences in separate cases. On appeal, the defendant contends that: (1) the evidence is insufficient to support his conviction; (2) the trial court erred in sentencing him as a Range III offender; and (3) the trial court erred in imposing consecutive sentencing. Following review of the record, we find no error and affirm the conviction and sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Hershell D. Koger, Pulaski, Tennessee (on appeal), and William C. Barnes, Jr., Columbia, Tennessee (at trial), for the appellant, Jeffrey Martin.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; T. Michel Bottoms, District Attorney General; and Brent A. Cooper , Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History

The charges against the defendant arose from his participation in a controlled buy involving a police informant. Officer Josh Davis, of the Columbia Police Department, was initially contacted by Chrystal Luna, the informant, after she herself was charged with a

cocaine offense. Ms. Luna, along with her attorney, met with Officer Davis to discuss "the possibility of helping [the police] get some high-level dealers that she knew in exchange for some consideration" on her pending case. One of the dealers that she knew was the defendant.

On June 7, 2006, Ms. Luna advised Officer Davis that she had spoken with the defendant and that she could purchase crack cocaine from him that day. Ms. Luna and Officer Davis later met, and she was equipped with an electronic listening device, as well as a purse which contained a video camera and a digital recorder. In addition, Ms. Luna was assigned a car to use, which had another camera hidden in the dashboard that recorded video but no sound. These electronic devices allowed Officer Davis to listen in "real time" to the transaction which occurred, as well as have a video recording of the events. Ms. Luna was also provided with $900 in photocopied cash with which to purchase the drugs.

After Ms. Luna was equipped with the electronic equipment, she again called the defendant to inform him that she was on her way to the carwash, the prearranged spot for the transaction. Officer Davis followed Ms. Luna in a separate vehicle. At the carwash, the defendant got into Ms. Luna's vehicle and directed her to proceed to an address on Sycamore Street. Officer Davis was able to hear the conversation between Ms. Luna and the defendant, which included a discussion of "work," a common term used when selling crack cocaine.

At the home on Sycamore Street, Ms. Luna parked the car, and Marquise Duncan approached the car window. Ms. Luna explained to him that she would not deal with anyone but the defendant. The dashboard video depicts Mr. Duncan placing something in the defendant's hand. Next, a hand appears on the video passing a "ball of crack cocaine" to Ms. Luna. The defendant took the $900, verified the amount, and placed it in his pocket. The defendant's voice is again heard, and he makes reference to a "key," which refers to a kilogram of powder cocaine, that he and Mr. Duncan were planning to sell together. After the transaction was complete, Ms. Luna drove back and met Officer Davis and gave him the drugs, which were later determined to be 25.9 grams of a rock-like substance containing cocaine.

Based upon this conduct, the defendant was indicted by a Maury County grand jury for one count of sale of cocaine in an amount of .5 grams or more. Following a jury trial, at which the video and audio evidence was played, the defendant was convicted as charged. A sentencing hearing was held on February 13, 2009. The first witness called was J.W. Hutt, an Assistant District Attorney General in Davidson County. He testified that he had been contacted by Maury County authorities because the defendant "had indicated that he had information on a" pending case in Davidson County. According to General Hutt, the defendant was very cooperative in providing the information and greatly assisted the State's

case. General Hutt further testified that he spoke with the Maury County District Attorney, who assured him that the defendant would be given consideration for his cooperation. On cross-examination, General Hutt stated that he was not at all familiar with the charges pending against the defendant and never discussed any "specific consideration" with him.

The thirty-four-year old defendant also testified and acknowledged that, in addition to the instant conviction for which he was being sentenced, he had charges pending for statutory rape and possession of cocaine with intent to sell. Despite this fact, he stated that he was now drug free and that his five children depended on him for support. He continued and stated that, prior to his instant incarceration, he supported those children, along with his parents, by starting a concrete business in 2006, after his release from jail in December, 2005. The defendant testified that his business netted him around $2,000 per week. However, he acknowledged that he had never filed an income tax return for this income. In fact, he acknowledged that he had not filed taxes since the mid 90's, claiming he always worked but that he was paid "under the table." When questioned regarding why he would sell drugs if he was earning that amount of income, the defendant continued to deny his guilt in the instant offense. He stated that he "made a mistake . . . I made a phone call for [Marquise] and I regret making that phone call." He continued that he "wasn't involved in [selling drugs]. It was just [his] friends."

During his testimony, the defendant acknowledged that he had been on probation at the time of the instant offense. He further stated that he had been convicted in 1995 of four felony cocaine cases, which resulted in an effective eight-year probationary sentence. He acknowledged several revocations of that probation, agreeing that five separate violations warrants had been issued against him. He further admitted that he had two additional felony cocaine convictions, in addition to the original four charged in 1995. Finally, the defendant was questioned about thirty-three separate arrests or charges which were denoted in the pre-sentence report. The report reflected that none of these arrests or charges resulted in convictions, but the defendant did not dispute the fact that he was arrested or charged for the offenses.

After hearing the evidence presented, the trial court sentenced the defendant, as a Range III offender, to twenty-five years incarceration. The court further ordered that the sentence be served consecutively to prior unserved sentences in separate cases. Following the denial of his motion for new trial, the defendant filed the instant appeal.[1]

---

[1] We note that the motion for new trial was not timely filed with the trial court, which made that motion a nullity. *See* Tenn. R. Crim. P. 33(b). Because the motion was a nullity, it did not toll the thirty-day period of filing for appeal to the court, resulting in an untimely notice of appeal. *See State v. Davis*, 748

(continued...)

**Analysis**

On appeal, the defendant has raised three points of error allegedly committed by the trial court. First, he contends that the evidence presented is insufficient to support his conviction. Next, he asserts that the trial court erred in sentencing him as a Range III offender. Finally, he contends that the court erred in imposing consecutive sentencing. As explained below, we conclude no error occurred.

## I. Sufficiency of the Evidence

The defendant submits that there was insufficient evidence to support the conviction for sale of cocaine beyond a reasonable doubt. When an accused challenges the sufficiency of the convicting evidence, the standard of review is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *State v. Franklin*, 308 S.W.3d 799, 825 (Tenn. 2010); *see also* Tenn. R. App. P. 13(e). "[T]he State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000); *see also State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). Questions involving the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and an appellate court does not reweigh or re-evaluate the evidence. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003).

A jury verdict approved by the trial court accredits the State's witnesses and resolves all conflicts in the evidence in favor of the State. *Id*. "Because a verdict of guilt removes the presumption of innocence and imposes a presumption of guilt, the burden shifts to the defendant upon conviction to show why the evidence is insufficient to support the verdict." *State v. Thacker*, 164 S.W.3d 208, 221 (Tenn. 2005). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The defendant was convicted of one count of sale of cocaine, a Schedule II controlled

---

[1](...continued)
S.W.2d 206, 207 (Tenn. Crim. App. 1987); Tenn. R. App. P. 4(a), (c). However, because a timely filed notice of appeal is not a jurisdictional prerequisite for this court, we may consider certain limited issues in the interest of justice. Tenn. R. App. P. 4(a). Regardless, the only issues raised on appeal in this case are sufficiency and sentencing, which are issues not required to be raised in the motion for new trial to preserve appellate review. *See State v. Bough*, 152 S.W.3d 453, 460 (Tenn. 2004); *State v. Vaughn*, 279 S.W.3d 584, 593 (Tenn. Crim. App. 2008). As such, our review of the issues raised is proper.

substance, in the amount of .5 grams or more. It is an offense to unlawfully and knowingly sell a controlled substance. T.C.A. § 39-17-417(a)(3) (2010). Tennessee caselaw holds that "a sale consists of two components: a bargained-for offer and acceptance, and an actual or constructive transfer or delivery of the subject matter property." *State v. Holston*, 94 S.W.3d 507, 510 (Tenn. Crim. App. 2002).

The defendant's sufficiency argument rests wholly upon his contention that the evidence was "in large part" circumstantial and that the conclusion that the defendant provided the cocaine to Ms. Luna is not the only "reasonable inference" which could be drawn from the proof submitted. He contends that the proof fails to show that he had "any interest or possible ownership in the" cocaine sold to Ms. Luna. However, the defendant's argument is based upon an incorrect premise of our law. With respect to circumstantial evidence, our supreme court recently overruled *State v. Crawford*, 470 S.W.2d 610 (Tenn. 1971), and its requirement that, to prove a defendant's guilt based on circumstantial evidence alone, the State must present proof "so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." *State v. Dorantes*, 331 S.W.3d 370, 380-81 (Tenn. 2011). The court held that direct and circumstantial evidence should be treated the same way in evaluating sufficiency of the evidence challenges. *Id.* Thus, the defendant's argument is based upon an erroneous premise.

Regardless, review of the record reveals more than sufficient evidence to support the defendant's guilt. In fact, the evidence against the defendant is overwhelming, as the entire transaction was recorded on not one, but two cameras. It is clear from direct testimony that the informant called the defendant to arrange the purchase, and he directed her to a certain location to complete the transaction. The tape shows Mr. Duncan handing the drugs to the defendant, who in turn handed them to Ms. Luna. The defendant accepted $900 from Ms. Luna, counted it, and placed it in his pocket. The defendant's assertion that he was just helping Mr. Duncan and not actually involved in the sale is belied by his statement on the video that he and Mr. Duncan had in fact been selling drugs together. This evidence established the defendant's involvement in this drug transaction from beginning to end. He is entitled to no relief.

## II. Sentencing

When a defendant challenges the length, range or manner of service of a sentence imposed by a trial court, the appellate court must conduct a *de novo* review of the record with a presumption that the sentencing determinations made by the trial court are correct. T.C.A. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and

circumstances." *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). If the sentencing court did not do so, then the presumption fails, and this court's review is *de novo* with no presumption of correctness. *State v. Pierce*, 138 S.W.3d 820, 827 (Tenn. 2004).

If a trial court considers the statutory criteria, imposes a lawful but not excessive sentence, states its reasons for the sentence it imposed, and its findings have adequate support in the record, then the appellate courts are bound by the trial court's decisions. *Carter*, 254 S.W.3d at 346. On appeal, the burden is on the defendant to show the impropriety of the sentence. T.C.A. § 40-35-401, Sentencing Comm'n Cmts; *State v. Goodwin*, 143 S.W.3d 771, 783 (Tenn. 2004).

Before imposing a sentence, a trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors in sections 40-35-113 and 40-35-114; (6) any statements the defendant wishes to make in the defendant's own behalf about sentencing; and (7) the potential for rehabilitation and treatment. T.C.A. § 40-35-210(b); *see also State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

### a. Range III Offender Status

The defendant's first sentencing argument is that the trial court erred in sentencing him as a Range III, persistent offender. The defendant is correct that in order to be sentenced within this range, he must have "[a]ny combination of five (5) or more prior felony convictions within the conviction class or higher or within the next two (2) lower felony classes, where applicable[.]" T.C.A. § 40-35-107(a)(1). All prior felonies may be counted separately to determine the range unless the convictions do not involve threatened or actual bodily injury or aggravated burglary, in which case such convictions are counted as one offense "if they were committed within the same twenty-four-hour period[.]" T.C.A. § 40-35-107(b)(4). "A defendant who is found by the court beyond a reasonable doubt to be a persistent offender shall receive a sentence within Range III." T.C.A. § 40-35-107(c).

Because the defendant was convicted of a Class B felony, to be sentenced within Range III, it must be shown that he had five or more convictions which were Class A, B, C, or D felonies. The trial court, in reaching its Range III determination, relied upon the following convictions:

| Case Number | Offense Date | Felony Class | Conviction Date |
| --- | --- | --- | --- |

| | | | |
|---|---|---|---|
| 8514, count 1 | 4/14/94 | C | 11/1/96 |
| 8514, count 2 | 4/20/94 | C | 11/1/96 |
| 8584 | 2/14/94 | C | 11/1/96 |
| 9006 | 1/25/94 | B | 11/1/96 |
| 10965 | 4/21/98 | C | 7/17/01 |

The defendant's argument is not based upon the fact that these convictions did not occur or that there are an insufficient number to establish him for the range. Rather, his contention is that the court erred in relying upon both count 1 and 2 in case 8514 because the two convictions were entered on a single judgment of conviction form. He asserts that the judgment entered in case 8514 is facially void because it purports to contain two separate convictions.

The defendant is correct that our statutes prescribe that each conviction requires the entry of a uniform judgment document with detailed information about the sentence. T.C.A. § 40-35-209(e)(1). "The judgment document shall be in the form provided and shall contain all of the information required [by statute]. The judgment should be prepared for each conviction; if there are multiple convictions in the same indictment, separate judgments should be filled out[.]" Tenn. R. Sup. Ct. 17; *see also State v. Stephens*, 264 S.W.3d 710, 728-29 (Tenn. Crim. App. 2007). Thus, we agree with the defendant that entry of two separate convictions on a single judgment form was erroneous. However, we do not agree with his contention that this results in a facially void judgment.

This issue has previously been addressed by this court in context of habeas corpus relief:

> Even though the conviction court failed to comply with Supreme Court Rule 17 when it declared its judgments on counts three and four in a single judgment form and counts five and six in a single form, we discern no defect in the conviction court's proceedings which renders the petitioners' convictions- and hence their sentences- void. . . . [A]lthough two of the judgment forms do contravene Rule 17 . . . , the forms clearly refer to specific counts of the indictment, and the issue of consecutive versus concurrent service of the sentences is explained. Technical violations related to the judgment forms and committal documents . . . would not render the [habeas corpus] petitioner's confinement illegal as long as a valid conviction and resultant legal sentence were imposed.

*State v. Gregory A. Hedges*, No. E1999-01350-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Oct. 6, 2000) (citations omitted). This court has also stated that "such a technical

-7-

concern is not an appropriate basis for habeas corpus relief. . . . The remedy for such error is not to render a defendant's convictions void, but rather to amend the judgment forms." *John Haws Burrell v. Howard Carlton, Warden*, No. E2002-01613-CCA-R3-PC (Tenn. Crim. App., at Knoxville, Oct. 17, 2003).

Based upon this, we cannot conclude that the defendant is entitled to relief. His reliance upon a technicality is not well taken in this context. The record establishes that the defendant was convicted of the requisite number of Class B or C felonies in order to support the decision to sentence him as a Range III offender. He has failed to show that the court was without jurisdiction or authority to impose the convictions or sentences in any of the cases. He has simply pointed out a "clerical mistake in filling out the uniform judgment document," which may be corrected at any time pursuant to Tenn. R. Crim. P. 36. Lack of compliance with a technical rule will not serve to invalidate the convictions or preclude their use to enhance the defendant's instant sentence.

### b. Consecutive Sentencing

Lastly, the defendant asserts that the trial court erred in ordering the sentence in this case be served consecutively to prior unserved sentences which the defendant had incurred. The imposition of consecutive sentencing is in the discretion of the trial court. *State v. Adams*, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997). A trial court may impose consecutive sentences upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. As relevant here, the statute permits imposition of consecutive sentences if the court finds by a preponderance of the evidence that:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive; [or]

. . . .

(6) The defendant is sentenced for an offense committed while on probation[.]

T.C.A. § 40-35-115.

In imposing consecutive sentences, the trial court stated: "I'm basing [consecutive sentencing] . . . on the finding that, in my opinion, the defendant is a professional criminal

who has knowingly devoted such defendant's life to criminal acts as a major source of his livelihood." The defendant argues that the record does not support that finding. He contends that only six of his prior convictions could be construed as "offenses generating income" and that those six occurred over a period of time from 1994-1998 when the defendant was age nineteen to twenty-three. He further noted that he was thirty-four years old at the time of sentencing and gave testimony regarding his concrete business, which he started in 2006 following his release from jail in December, 2005. The defendant also notes that the pre-sentence report reflects periods of employment at other concrete companies and his testimony that he was paid "under the table" but always worked. His main contention, however, appears to be the trial court's reliance upon the thirty-three criminal charges which were later "retired, dismissed, or no bill" but were listed in the pre-sentence report.

Initially, we must agree with the defendant that the trial court should not have based its finding upon any consideration of those thirty-three noted arrests or charges filed. Those do not stand as convictions against the defendant and, without more, also should not have been considered as criminal behavior on the part of the defendant. Nonetheless, any error resulting for that consideration is harmless, as the record is replete with other evidence supporting the finding that the defendant was a professional criminal.

As pointed out by the State, while the defendant did not incur new "income generating" convictions during that time period following his 1998 conviction, the record indicates that he was incarcerated for much of this time period up until 2005. Moreover, while the defendant claims that he "always worked," albeit being paid "under the table," he has failed to show any documentation to support this. The trial court discredited his testimony implicitly regarding the ownership of his business, and we will not reevaluate determinations of credibility made by a lower court. *See Evans*, 108 S.W.3d at 236. Even if the statements regarding his concrete business had been considered true, the defendant has provided a valid instance of criminal behavior to consider, as failure to file and pay income tax is a crime. Nevertheless, the defendant failed to put forth any documentation to support his contention of ownership, or that there was even such a business in existence. We would also point out the $127,000 of assets claimed by the defendant in the pre-sentence report, as well as the fact that he had no debts except for monthly child support. It is explicitly noted in that report that the defendant did not initially want to report these assets for fear that the judge would think that he was a drug dealer. Again, the testimony that he bought all these assets, except an inherited house, from profits from the concrete business was implicitly rejected by the trial court.

The fact that the instant offense involves a sale of cocaine, a crime for which the defendant has previously been convicted of on at least five occasions, also lends credence to the conclusion that the defendant was a drug dealer "who has knowingly devoted himself

to criminal acts as a major source of livelihood or who has substantial income or resources not shown to be derived from a source other than criminal activity." *See Gray v. State*, 538 S.W.2d 391, 393 (Tenn. 1976). Ms. Luna gave testimony that she knew the defendant to be selling drugs, and the defendant himself stated on the video that he had been "working," which referenced selling drugs. The defendant has failed to carry his burden of establishing that this finding was error.

Moreover, even though not explicitly relied upon by the trial court, the trial court's findings did also note other factors which support consecutive sentencing. At this juncture, we note that the criteria for consecutive sentencing are stated in the alternative, and the trial court is required to find only one in order to impose consecutive sentencing. *See State v. Adams*, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997). One such criteria is that the defendant has an extensive criminal history. The trial court noted that the defendant had "about as extensive a criminal activity file as I've ever looked at . . . ." The court noted that, in addition to the convictions necessary to qualify the defendant as a Range III offender, he also had a felony evading arrest conviction, as well as fourteen misdemeanor convictions. Moreover, a third possible criteria to consider is that the defendant committed this offense while on probation. The trial court noted that the defendant "had violation of probation warrants issued against him on five different occasions." Moreover, from the pre-sentence report and the defendant's own admission, the record establishes that the defendant was indeed on probation at the time this specific sale of cocaine offense was committed. As such, we cannot conclude that the trial court erred in imposing consecutive sentencing. The defendant is not entitled to relief.

**CONCLUSION**

Based upon the foregoing, the judgment of conviction and sentence are affirmed as imposed by the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE